IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JONATHAN RODRIGUEZ,

      Petitioner,

v.                              Civil Action No. 2:09cv44
                                (Judge Maxwell)

JAMES CROSS, Warden,

      Respondent.

## REPORT AND RECOMMENDATION

### I. Procedural Background

The *pro se* petitioner initiated this case on April 2, 2009, by filing a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. (Dckt. 1) Pursuant to 18 U.S.C. §§ 3621(b) and 3624(c), the petitioner challenges the Bureau of Prisons ("BOP") decision to place him in a Residential Release Center ("RRC" formerly known as a Community Corrections Center or "CCC") for 120 days. *Id*.

On April 21, 2009, the petitioner paid the required filing fee. (Dckt. 7) Accordingly, on April 22, 2009, the undersigned made a preliminary review of the file, determined that summary dismissal was not warranted at that time, and directed the respondent to file an answer to the petition. (Dckt. 8)

The respondent filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment on May 22, 2009. (Dckt. 12) Because the petitioner is proceeding *pro se*, the Court issued a Roseboro Notice on May 26, 2009. (Dckt. 14)

On June 17, 2009, the petitioner filed a combined motion for injunctive relief, for writ of

mandamus and a "response to the respondent's motion to show cause." (Dckt. 16) The respondent filed a reply on July 7, 2009. (Dckt. 18) Accordingly, this case is ripe for review.

## II. Factual Background

The petitioner is currently serving a 78-month sentence imposed by the United States District Court for the Western District of Michigan. Although he is the responsibility of the Federal Prison Camp at the Hazelton Penitentiary in Bruceton Mills, West Virginia ("FPC-Hazelton"), because of a disciplinary infraction, the petitioner is being housed in the Special Housing Unit ("SHU") of the Federal Correctional Institution in Morgantown, West Virginia ("FCI-Morgantown"), as a "trans-seg" inmate.[1] (Dckt. 13) at 1-2.

Pursuant to BOP policy, on August 18, 2008, the petitioner was reviewed for RRC placement. *Id*. at 4. From that review, the petitioner was recommended for 90-120 days placement. *Id*. However, before the recommendation was forwarded to the Community Corrections Manager ("CCM") for final approval, the petitioner requested he be referred for more than six months. *Id*. Upon consideration of additional information the petitioner supplied, his case manager, Tammy R. Tichenell ("Tichenell"), prepared a memorandum for the Warden which sought additional RRC time for the petitioner. *Id*. The Warden signed the memorandum and it was forwarded to Mid-Atlantic Regional Director, Kim White ("White"), for approval. *Id*. White neither approved nor denied the request, but instead, sent it back to the Warden with questions about the propriety of the request. *Id*. at 4-5. After further discussion between Tichenell and the Camp Administrator, it was decided that 90-120 days placement in an RRC was appropriate. *Id*. at 5. Thus, the request for additional

---

[1] A "trans-seg" inmate refers to an inmate in Transfer-Segregation, or an inmate that was transferred to another institution solely for the purpose of being placed in that institution's SHU. (Dckt. 13 at 2) In this case, the petitioner committed a disciplinary infraction while incarcerated at FPC-Hazelton. As a result, the petitioner received sanctions including disciplinary segregation. *Id*. at 1-2. However, as there were no beds available in the SHU at Hazelton, the petitioner was transferred to FCI-Morgantown, solely for the purpose of being housed in disciplinary segregation. *Id*. at 2.

2

time was abandoned and the original request for 90-120 days was forwarded to the CCM for approval. *Id*. The CCM approved the petitioner for 90-120 days placement. *Id*.

Nonetheless, because of an intervening disciplinary action, the BOP has since re-evaluated the petitioner's RRC eligibility. *Id*. Upon such re-evaluation, it was discovered that the petitioner does not have a secure residence with his sister as previously thought. *Id*. Moreover, it was discovered that the petitioner's intended employment is with a family business owned by his father, a convicted criminal. *Id*. In addition, the petitioner was recently subjected to a urinalysis which tested positive for marijuana use. *Id*. This information raises some concern over the petitioner's "ability to function properly in the community-based environment of an RRC." *Id*. Therefore, staff has determined that the petitioner needs a more structured environment to prevent him from engaging in inappropriate or illegal behavior. *Id*. at 6. Thus, staff has reassessed the petitioner's need for RRC placement and made a new recommendation that petitioner receive only 45 days in an RRC prior to his release. *Id*.

### III   Historical Background

Prior to December 2002, the BOP had a policy of placing prisoners in a Community Corrections Center ("CCC" or "halfway house") for up to six months, regardless of the total length of the inmate's sentence. See BOP Program Statement 7310.04. At that time, § 3624(c) provided:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

On December 13, 2002, the Office of Legal Counsel for the Department of Justice issued a memorandum stating that, in its opinion, § 3624(c) limited an inmate's placement in a CCC to the

lessor of six months or ten percent of the inmate's sentence. The BOP's adoption of this opinion prompted numerous habeas petitions which ultimately lead the Courts[2] to find the policy contrary to the plain meaning of 18 U.S.C. § 3621(b) which states:

> The Bureau shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence -
>
> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

Since that time, however, Congress has passed the Second Chance Act (April 2008), which expands the maximum amount of time an inmate may reside in a CCC to 12 months. Moreover, the Act eliminates the 10% restriction on an inmate's time in the CCC. It is under this new version of §§ 3621(b) and 3624(c) that the petitioner makes his challenge.

### IV. Contentions of the Parties

**A. The Petitioner**

---

[2] See Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004); Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Cato V. Menifee, 2003 WL 22725524 at *4 (S.D.N.Y. Nov. 20, 2003 (collecting cases).

In his pleadings, the petitioner makes three specific challenges to the BOP's decision to place him an RRC for 90-120 days. They are:

(1) The BOP failed to provide him adequate RRC placement to ensure greatest likelihood for successful reintegration into the community in accordance with 18 U.S.C. § 3624(c)(6)(3). In support of this claim, the petitioner asserts that the Second Chance Act expanded the release requirements of 18 U.S.C. §§ 3621(b) and 3624, while narrowing the BOP's discretion concerning RRC eligibility. Petition at 5-6. The petitioner further asserts that the Act disqualified the old 10% rule and increased the time in which an inmate may be place in an RRC. *Id*. at 6. According to the petitioner, this, coupled with the Act's new language that replacement be "of a duration sufficient enough to ensure the greatest likelihood for successful integration into the community," rather than just what is reasonable, show Congress' intent "to mandate that the Bureau of Prisons ensure each inmate is provided with the time and resources that increase to the greatest likelihood there will be a successful reintegration into society." *Id*. Thus, the petitioner asserts that, more time, rather than less, is the logical requirement under the Second Chance Act, particularly in light of the Act's intent to aid the transition from prison to society. *Id*.

(2) The BOP acted arbitrarily and capriciously in considering his administrative requests for additional halfway house placement. In support of this claim, the petitioner asserts that he has attempted "to articulate the reasoning behind his need to be provided with a maximum amount of transition time in a residential reentry center." Petition at 7. However, the petitioner asserts that the BOP is "acting independent of the norm" and that its decision is "whimsical" in nature. *Id*. The petitioner further supports his argument by stating that the BOP did not thoroughly assess his need under § 3621(b), so it could not have appropriately "completed its duty under . . . § 3624(c)(6)(3)." *Id*. To show the BOP's failure to thoroughly assess his need, the petitioner first points to staff's

5

failure to respond to the inquires of the Regional Director. *Id*. Next, the petitioner notes that no one in the administrative remedy process references or explains the difference between the facts surrounding his original 90-120 placement recommendation, and Warden Driver's request for additional time. *Id*. at 7-8. Then, in reply to the respondent's motion, the petitioner points to the contradictory nature of the BOP's recommendations. (Dckt. 16) Specifically, the petitioner asserts that the reasons now iven for limiting his placement to 45 days, is much of the same reasoning Warden Driver gave for requesting more than six months placement. *Id*.

(3) He is prejudiced and unduly burdened by the BOP's dereliction of duty and failure to comport with 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c)(6)(3) for the release of a prisoner by unnecessarily extending petitioner's period of incarceration. Recognizing that the Director of the BOP has discretion in making RRC placement decisions, the petitioner asserts that such discretion must comport with the applicable statutes. Petition at 8. The petitioner asserts that in this case, the BOP's decision does not comport with the applicable statutes. *Id*. In support of that claim, the petitioner notes the following with regard to the five enumerated factors that must be considered under § 3621(b):

> (a) The resources of the facility - not a factor in his case. *Id*. The petitioner notes that bed space is available, but that it makes no difference to the time he is placed in an RRC. *Id*.
>
> (b) The nature and circumstances of the offense - not considered in his case. *Id*. The petitioner asserts that the nature and circumstances could not have been considered; otherwise, the BOP would be reluctant to thrust him back into the "environment that led to his downfall." *Id*.
>
> (c) The history and characteristics of the prisoner - not adequately considered. *Id*.

6

The petitioner asserts that his personal history and characteristics could not have been considered; otherwise, the BOP would have paid more attention to the petitioner's concerted effort at self-rehabilitation. *Id.*

(d) The petitioner's release residence - not a prong of § 3621(b), but still an important factor to determining transition needs. *Id.* The petitioner asserts that inmates without a release residence generally need more time in an RRC. *Id.* Here, the BOP now states that his intended release residence is not appropriate, and uses that information to restrict his RRC time, rather than increase it as is customary. (Dckt. 16) at 4-9.

(e) The petitioner's need for increased services - not a prong of § 3621(b), but still an important factor to determining transition needs. Petition at 8. The petitioner asserts that inmates with a need for more transitional services generally need more time in an RRC. *Id.* at 8-9. Again, the petitioner asserts that the reasons the BOP now gives for reducing his time in an RRC, should generally be considered for increasing the time. (Dckt. 16)

In addition, the petitioner has also filed a combined motion for injunctive and mandamus relief. (Dckt. 16). It appears from his request, that the petitioner seeks an order from the Court finding that the BOP did not properly consider him for RRC placement under the applicable statutes. *Id.* Thus, the petitioner seeks an Order instructing the BOP to properly consider him, and in doing so, grant him the maximum time recommended for RRC placement, nine months. *Id.*

**B.  The Respondent**

In response to the petition, the respondent asserts that the petitioner does not just seek relief under § 2241, but also, injunctive and mandamus relief. With that in mind, the respondent asserts

7

that the petition should be denied in its entirety and dismissed with prejudice, for the following reasons:

(1) the petitioner has failed to make the requisite showing for injunctive and mandamus relief;

(2) the BOP's decision regarding petitioners' RRC placement is not subject to judicial review;

(3) the petitioner has no standing to challenge the decision in question; and

(4) the complaint is moot.

In response to the petitioner's combined motion for injunctive and mandamus relief, the respondent argues that the petitioner has ignored or misinterpreted the response. (Dckt. 18) at 3. Moreover, the respondent asserts that the factual circumstances of the petitioner's case have evolved during the pendency of this proceeding, thereby changing the analysis of what is proper in his case. *Id*. at 4. Regardless, the respondent asserts that the fact remains that the petitioner is not entitled to relief, whether under § 2241, or pursuant to such extraordinary relief as an injunction or writ of mandamus. *Id* at. 5.

## V.  Analysis

### A.  18 U.S.C. § 3625

In accordance with the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 and 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action with the meaning of a relevant statute is entitled to judicial review thereof," except to the extent that a statute precludes judicial review. In this case, the petitioner challenges the length of time the BOP has deemed appropriate for him in an RRC prior to his release. That decision is governed by 18 U.S.C. § 3624(c)(1). Under the Second Chance Act, that section now provides:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

Because such a determination involves a decision regarding an inmate's place of imprisonment, in making a determination under § 3624(c), the Director must necessarily consider the five factors enumerate in 18 U.S.C. § 3621(b), as outlined previously in this Order. However, pursuant to 18 U.S.C. § 3625, Congress has specifically excluded subsections 3621 and 3624 from judicial review under the APA. See Davis v. Beeler, 966 F.Supp. 483, 489 (E.D.Ky. 1997). Section 3625 states: "[t]he provisions of section 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." Accordingly, any substantive decision by the BOP with regard to the petitioner's eligibility for RRC placement, or the length of time in an RRC, is not reviewable by this Court. See Lyle v. Sivley, 805 F.Supp. 755, 760 (D.Ariz. 1992). However, even where judicial review under the APA is specifically excluded by statute, the court may still review whether there is clear evidence of unconstitutional conduct or evidence that the agency acted outside the scope of its authority. Webster v. Doe, 486 U.S. 592 (1988); Turner v. Safley, 482 U.S. 78, 84 (1987); Procunier v. Martinez, 416 U.S. 396, 405 (1974); Davis v. Beeler, 966 F.Supp. at 489.

It is well-established that an inmate has no constitutional right to be confined to a particular institution, Meachum v. Fano, 427 U.S. 215, 223 (1976), nor any "justifiable expectation" that he will be confined in a particular prison. Olim v. Waukinekona, 461 U.S. 238 (1983). Thus, because the petitioner has no protected liberty interest in being placed in an RRC prior to his release, and the decision whether to make such placement is clearly a matter of prison management within the

9

knowledge and expertise of BOP officials, this Court cannot intervene in that decision unless a clear constitutional violation occurred.

Here, the petitioner basically argues that the decision of the BOP was wrong. In support of his claim, the petitioner asserts that the BOP could not possibly have conducted an appropriate review under §§ 3621(b) and 3624(c), or it could not have come up with the decision it did. However, it is clear that the BOP conducted a five-factor review under § 3621(b). The fact that the petitioner's circumstances under that review could warrant two different interpretations of his need for RRC placement, does not establish that the BOP was either derelict in its duties or wrong. In addition, whether the petitioner's factual circumstances warrant more time or less time in an RRC, is a decision within the specific knowledge and expertise of BOP's officials.

Moreover, the fact that Ms. Tichenell has changed her opinion regarding those facts is also irrelevant. The petitioner's original placement recommendation was 90-120 days. After discussing that recommendation with the petitioner, Ms. Tichenell determined that it might be appropriate to request a longer period of RRC placement. Accordingly, she prepared a memorandum for Warden Driver and that memorandum was forwarded to the Regional Director. When the recommendation came back from the regional office with some concerns, Ms. Tichenell, along with the Camp Administrator, again reviewed the petitioner's circumstances and determined that the original recommendation of 90-120 days was appropriate. That recommendation was forwarded to the CCM and approved. Since that time, new information has come to light, and whether that information should have been discovered sooner is inapposite. It has now been considered and Ms. Tichenell has made a new placement recommendation based on that intervening information.

Thus, although the procedure in the petitioner's case has been somewhat unusual, it was not unconstitutional, nor outside the scope of the BOP's statutory authority. To the contrary, the BOP

has exercised the exact discretion it has been granted under § 3624. It is important to note that the BOP is not required to place the petitioner in a RRC for any amount of time, but merely to consider his eligibility and length of placement. The BOP has done so, and the petitioner is not entitled to any specific amount of time or any further consideration. Thus, he is not entitled to relief under § 2241.

**B.  Request for Injunctive and Mandamus Relief**

    **1.  Injunctive Relief**

The standard for granting injunctive relief in this Court is the balancing-of-hardship analysis set forth in Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977). In making this analysis, the Court must consider the following four factors:

    (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied,

    (2) the likelihood of harm to the defendant if the requested relief is granted,

    (3) the likelihood that the plaintiff will succeed on the merits, and

    (4) the public interest.

Direx Israel, Ltd v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). The "[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction." *Id.* (citation omitted).

A court will not grant a preliminary injunction unless the plaintiff first makes a "clear showing" that he will suffer irreparable injury without it. *Id.* The required harm "must be neither remote nor speculative, but actual and imminent." *Id.* (citations and internal quotation omitted). If such harm is demonstrated, the court must balance the likelihood of harm to the plaintiff if an injunction is not granted and the likelihood of harm to the defendant if it is granted. *Id.* (citation

omitted). If the balance of those two factors "'tips decidedly' in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991) (citations omitted). However, "[a]s the balance tips away from the plaintiff, a stronger showing on the merits is required." *Id.* (citation omitted).

In this case, the petitioner cannot show the requisite harm. See Lyle v. Sivley, 805 F.Supp. at 760 (a prisoner has no right to transfer to a less restrictive environment) (citation omitted). Moreover, as already outlined in this opinion, the petitioner cannot establish a likelihood of success on the merit of his claims. Accordingly, the petitioner's request for injunctive relief should be denied.

**2. Mandamus Relief**

Pursuant to 28 U.S.C. § 1361, "the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." However, the Court's authority to issue a writ of mandamus extends only to the issuance of writs necessary or appropriate in aid of its jurisdiction. 28 U.S.C. § 1651. "The remedy of mandamus is a drastic one, to be invoked only in extraordinary circumstances." Kerr v. United States Dist. Court, 426 U.S. 394, 402 (1976). "The party seeking mandamus relief carries the heavy burden of showing that he has no other adequate means to attain the relief he desires and that his right to such relief is clear and indisputable." In re Beard, 811 F.2d 818, 826 (4th Cir. 1987) (internal quotations omitted). To do so, the party seeking mandamus relief must demonstrate (1) a clear and indisputable right to the relief sought; (2) the responding party has a clear duty to do the specific act requested; (3) the act requested is an official

12

act or duty; (4) there are no other adequate means to attain the relief he desires; and (5) the issuance of the writ will effect right and justice in the circumstances. United States ex rel. Rahman v. Oncology Assocs., P.C., 198 F.3d 502, 522 (4th Cir. 1999).

Here, the petitioner has failed to show he meets any of the requirements for mandamus relief. As already outlined herein, the petitioner cannot show he has a clear and indisputable right to the relief sought. In addition, the petitioner cannot show that the respondent has a clear and official duty to act in the specified manner. Also, there are obviously other means to attain the relief the petitioner desires, *i.e.*, his request for relief under § 2241. Finally, considering the circumstances of this case, the undersigned finds that the issuance of a writ would not affect right or justice. Accordingly, the petitioner has failed to show extraordinary circumstances which would entitle him to a writ of mandamus.

## VI. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (dckt. 12) be **GRANTED** and the petitioner's § 2241 petition (dckt. 1) be **DENIED** and **DISMISSED with prejudice**. In addition, the undersigned recommends that the petitioner's Motion for Injunctive Relief and Motion for Writ of Mandamus (dckt. 16) be **DENIED**.

Within ten (10) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1);

Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: July 14, 2009.

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE